UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 11-90-GWU

SARAH ELIZABETH YOUNG,                                   PLAINTIFF,

VS.                             **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,              DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of her applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The appeal is currently before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation process in assessing whether a claimant is disabled.

1. Is the claimant currently engaged in substantial gainful activity? If so, the claimant is not disabled and the claim is denied.

2. If the claimant is not currently engaged in substantial gainful activity, does he have any "severe" impairment or combination of impairments--i.e., any impairments significantly limiting his physical or mental ability to do basic work activities? If not, a finding of non-disability is made and the claim is denied.

3. The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of

1

        impairments meets or equals in severity an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of Impairments). If so, disability is conclusively presumed and benefits are awarded.

4.     At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work. If so, the claimant is not disabled and the claim is denied. If the plaintiff carries this burden, a prima facie case of disability is established.

5.     If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher

v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. § 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional

impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Id. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Sarah Elizabeth Young, was found by an administrative law judge (ALJ) to have "severe" impairments consisting of a history of right wrist fracture and subsequent degenerative joint disease, a history of lower extremity edema, degenerative changes of the lumbar spine, and depression.  (Tr. 14). Nevertheless, based in part on the testimony of a vocational expert (VE), the ALJ determined that the plaintiff retained the residual functional capacity to perform a significant number of jobs existing in the economy, and therefore was not entitled to benefits.  (Tr. 16-19).  The Appeals Council declined to review, and this action followed.

11-90  Sarah Elizabeth Young

At the administrative hearing, the ALJ asked the VE whether a person of the plaintiff's age of 50 with an eighth grade education and no relevant work experience could perform any jobs if she were limited to lifting 20 pounds occasionally and 10 pounds frequently, and also had the following non-exertional restrictions.  She:  (1) could "frequently" push, pull, and perform handling with her right upper extremity; (2) could occasionally climb ladders, ropes, and scaffolds; (3) could perform simple, repetitive work and tolerate routine changes in an object-focused work setting; (4) could maintain attention in two-hour segments during an eight-hour day; and (5) could have no contact with the general public.  (Tr. 42).  The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies.

On appeal, this court must determine whether the administrative decision is supported by substantial evidence, or if there was an error of law.  There is an additional issue in that the plaintiff had prior applications for benefits denied in an ALJ decision dated May 21, 2008.  (Tr. 49-58).  Although she appealed the denial, this court confirmed the Commissioner's decision.  <u>Young v.  Commissioner of Social Security</u>, No. 6:09-CV-266-HRW (E.D. Ky. April 19, 2010).  The Court of Appeals later affirmed in an unpublished disposition.  <u>Young v. Commissioner of Social Security</u>, No. 10-5692 (6th Cir. November 7, 2011).  The ALJ in the present case declined to reopen the prior decision, meaning that the earliest date the plaintiff could be entitled to benefits was May 22, 2008.  However, the ALJ also

6

found that the plaintiff's condition had deteriorated since the prior determination and imposed greater limitations.

The plaintiff alleged disability due to lower back pain, a ruptured disc, spinal cord deterioration, a fractured right wrist, and reflex sympathetic dystrophy. (Tr. 140). She testified that she had not been able to work since 2005 due to these problems. In fact she needed to use a walker to keep from falling. (Tr. 32-33). She was also very nervous, and, although she helped her adult daughter, with whom she lived, as much as possible, she stayed in her bedroom most of the time. (Tr. 36). She was especially nervous around children, and would become short of breath and cry if she became upset. (Tr. 36). She still had difficulty using her right hand, and needed help putting on her shoes, cutting her toenails, and shaving her legs, although she could perform some daily activities such as cooking for herself and washing dishes. (Tr. 35, 38).

Medical evidence in the transcript includes 2007 office notes from Dr. Billy J. Parson, and a colleague, Dr. Nadim, who attempted to treat the plaintiff following a November, 2006 fracture of the right wrist, which was not healing. (Tr. 226). The plaintiff was placed in a cast and an x-ray showed the fracture was beginning to heal, but there was sclerosis involving the distal radius and non-union of the tip of the ulnar styloid was noted. (Tr. 222). Dr. Nadim noted that, although she was neurovascularly intact, there seemed to be a subluxation of the distal radial ulnar joint although he could not be positive. (Id.). He referred the plaintiff to a hand

surgeon for a second opinion, but apparently they refused to see her until she had insurance.  (Id.).

Office notes from Dr. Deborah J. Eadens, a specialist in internal medicine, predate the prior final decision of May 21, 2008, and reflect the plaintiff's 2007 treatment by Dr. Parson and Dr. Nadim and an assessment of reflex sympathetic dystrophy (RSD), as well as low back pain, and a fractured radius.  (Tr. 246-48).  It is not clear which of Dr. Eadens' records were included in the prior proceedings, but the new evidence does include a residual functional capacity assessment form dated July 18, 2008, in which Dr. Eadens described the plaintiff's problems as a non-union fracture of the right radius with reflex sympathetic dystrophy, and low back pain with radiculopathy to both lower extremities.  (Tr. 230).[1]  Dr. Eadens limited standing and walking to a total of less than one hour a day due to low back pain in radiculopathy and catching that caused frequent falls, and sitting to less than one to two hours per day, due to sciatic neuropathy.  She opined that the plaintiff could never climb, crouch, crawl, could occasionally balance and kneel, and had a limited ability to reach, handle, feel, push, and pull.  There were also limitations on

---

[1] The plaintiff requested a remand to consider this opinion under Sentence Six of 42 U.S.C. § 405(g) in the prior proceedings, but the request was denied because no good cause had been shown for failing to present it earlier, and because it was not material to the period at issue in the appeal. Young v. Astrue, London Civil Action No. 09-266-HRW (E.D. Ky. April. 19, 2010).  Therefore, this is the first time it is properly before the court.

working around heights, moving machinery, temperature extremes, and vibration. (Tr. 231-32).

Dr. Martin Fritzhand conducted a consultative examination of the plaintiff on October 14, 2008.  He noted that the plaintiff ambulated with a slow, shuffling gait and appeared older than her stated age.  (Tr. 295).  His examination showed bilateral pretibial edema, but he was unable to assess the range of motion of the plaintiff's right shoulder or her muscle or grasp strength due to complaints of pain and lack of effort on manual muscle testing.  (Tr. 296).  There were also complaints of lower back pain with minimal movement of the legs, and he was unable to assess the strength of the lower extremities due to "ratchety give way response," although pinprick and light touch were diminished over the lower extremities.  (Tr. 297).  His impression was of traumatic and degenerative joint disease of the right wrist, chronic low back pain, and chest pain, "etiology not apparent."  Dr. Fritzhand stated that he was unable to assess any functional impairment without a resting electrocardiogram and because he was unable to perform a satisfactory musculoskeletal evaluation.  (Id.).  He obtained an x-ray of the lumbosacral spine showing slight narrowing at L4-L5 (Tr. 299), but did not comment on this result.

A state agency physician, Dr. Carlos Hernandez, prepared a physical residual functional capacity assessment on November 5, 2008.  He concluded that the plaintiff could perform "light" level exertion, was limited to "frequent" pushing and pulling with the right upper extremity, and could occasionally climb ladders, ropes,

and scaffolds. (Tr. 326-32). He appeared to base his opinion mainly on Dr. Fritzhand's examination, and dismissed Dr. Eadens' restrictions as being "not supported by objective findings." (Tr. 331). Another state agency physician confirmed his opinion on February 2, 2009. (Tr. 354-60).

The ALJ stated in her decision that she gave great weight to the opinions of the state agency consultants, and rejected the conclusions of Dr. Eadens "as they far exceed the findings on diagnostic evidence and . . . physical examinations." (Tr. 17). She stated that neurological examinations were consistently normal, and cited MRI reports showing no abnormalities of the hips, only degenerative changes in the thoracic spine, and a protrusion at L4-L5 with no nerve root compression. (Id.).

The plaintiff challenges the rejection of the treating physician opinion on appeal, correctly noting that the opinion of a treating physician such as Dr. Eadens is entitled to controlling weight under the Commissioner's regulations if it is supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other evidence in the case record. 20 C.F.R. § 404.1527(d)(2). In the present case, the ALJ found that the treating physician opinion was not sufficiently supported to be given controlling weight, but the regulations also provide that when the treating source opinion is not given controlling weight, it will be weighed by using six factors set out in paragraphs (d)(2)(i) through (d)(6). These factors include the length of the treatment relationship, the nature and extent of the treatment relationship, the supportability

and consistency of the opinion, the specialization of the treating source, and any other factors which tend to support or contradict the opinion. Blakley v. Commissioner of Social Security, 581 F.3d 399, 408 (6th Cir. 2009), citing Soc. Sec. Ruling 96-2p, at 4.  The court agrees with the plaintiff that the ALJ did not proceed to weigh the treating physician's opinion in accordance with the regulations after rejecting it as controlling.  Although the ALJ cited MRI studies of the pelvis and spine which were not available to Dr. Eadens at the time she completed her opinion (Tr. 409-13), none of these studies covered the plaintiff's right wrist.  Dr. Hernandez found a limitation in using the right arm that was considerably less than Dr. Eadens. Yet the only physician other than Dr. Eadens who examined the plaintiff's right arm was Dr. Fritzhand, who stated that he could not reach any conclusions.[2]

In addition, the plaintiff asserts that the ALJ's hypothetical question omitted any limitation on working only at medium to lower stress work environments, as contemplated in the report of Dr. Gary Maryman, a consultative psychological examiner. (Tr. 305).  Dr. Maryman's restrictions are uncontradicted by any other examining source.  State agency psychologists Lea Perritt and Ilze Sillers also

---

[2] Another factor that was unmentioned by the ALJ was an observation by a state agency employee in June, 2008 who stated that the plaintiff could not even sign forms with her right hand, and who thought that her hands showed "obvious" signs of nerve damage. (Tr. 137).  See Social Security Ruling 96-7p ("In evaluating the credibility of the individual's statements, the adjudicator must also consider any observations recorded by SSA personnel who previously interviewed the individual, whether in person or by telephone.")

11-90  Sarah Elizabeth Young

completed mental residual functional capacity forms which included "moderate" limitations on responding appropriately to changes in the work setting in Part I ("Summary Conclusions") but opined in Part III ("Functional Capacity Assessment") that the plaintiff could tolerate routine change in an object-focused setting.  (Tr. 307-8, 349-51).  The hypothetical question did include a limitation to routine changes in an object-focused work setting as well as to simple, repetitive work.  (Tr. 42).  Since the case is being remanded on other grounds, the ALJ should take the opportunity to clarify that the VE's answer is consistent with medium to lower stress work environments.

The decision will be remanded for further consideration.

This the 15th day of March, 2012.

Signed By:

*G. Wix Unthank*

United States Senior Judge